# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:09-CV-295-GCM-DCK

| | |
|---|---|
| COFFEY CREEK ASSOCIATES LIMITED PARTNERSHIP, a South Carolina limited partnership, )))) | |
| Plaintiff, ) | |
| v. ) | **ORDER** |
| ) | |
| GUARDIAN PROTECTION SERVICES, INC.; GUARDIAN PROTECTION SERVICES - TEXAS, LLC; HARVEY W. BERRY; and RONALD L. BOWDEN, Trustee of the Donald Oliver Voting Trust, ))))))) | |
| Defendants. ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Transfer Venue" (Document No. 12). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b) and is ripe for disposition. Having carefully considered the papers, the record, applicable authority, and the arguments of counsel at a motions hearing on April 22, 2010, the undersigned will deny the motion.

## BACKGROUND

On or about October 26, 2006, W.B.E. of North Carolina Inc., d/b/a Ranger American of North Carolina ("WBE-NC"), entered into a Lease Agreement ("Lease") with Plaintiff Coffey Creek Associates Limited Partnerships ("Plaintiff" or "Coffey Creek") in connection with premises located in Charlotte, North Carolina. (Document No. 1). The Lease term was scheduled to run from December 1, 2006 through November 30, 2011. Id.

On May 9, 2008, W-B Holdings, Inc. ("WB") along with "Ranger Entities" including WBE-

NC, and individual owners of WB and Ranger Entities, as "Seller," entered into an Asset Purchase Agreement ("APA") with Guardian Protection Services - Texas, LLC, ("GPS-TX") as "Buyer." (Document Nos. 1-1 and 13-2). Coffey Creek contends that pursuant to the APA, the liabilities of WBE-NC, including obligations under the Lease, became the liabilities of GPS-TX and Guardian Protection Services, Inc. ("GPS, Inc."). (Document No. 1, ¶¶ 39, 53-59).

After WBE-NC failed to pay rent and charges due under the Lease from and after November 1, 2008, Coffey Creek issued a written Notice of Default on December 18, 2008. (Document No. 1, ¶¶ 27-28). Coffey Creek filed a Complaint on December 23, 2008, and then an Amended Complaint on February 5, 2009, in the Superior Court of Mecklenburg County, North Carolina against WBE-NC, W.B.E. of Texas, Ltd., W.B.E. of Florida, Inc., W.B.E. of Georgia, Inc., W.B.E. of Indiana, Inc., W.B.E. of Colorado, Inc., W.B.E. of Arizona, Inc., W-B Holdings, Inc. (together "WB Defendants" or "WB Entities"), GPS, Inc., GPS-TX (together "GPS Defendants"), Harvey Berry, and Ronald Bowden, individually and as Trustee of the Donald Oliver Voting Trust (all together "Defendants"). Plaintiff's action seeks damages for breach of contract, anticipatory breach of contract, tortious interference with contractual relations, and unfair and deceptive trade practices.

On May 7, 2009, the WB Defendants filed voluntary petitions under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas. On or about June 17-19, 2009, the WB Defendants filed notices of bankruptcy in the state court action. Based on the bankruptcy, Defendants filed their "Notice Of Removal" (Document No. 1) to this Court on July 20, 2009, pursuant to 28 U.S.C. § 1452.

On July 30, 2009, Plaintiff filed its "Notice Of Voluntary Dismissal Without Prejudice..." (Document No. 3) of the WB Defendants, as well as "Plaintiff's Motion To Remand" (Document No. 4). On August 27, 2009, Defendants countered, filing a "Supplemental Notice Of Removal"

(Document No. 11) based on diversity, stating their "second, independent and alternative basis for removal under 28 U.S.C. § 1332." Also on August 27, 2009, Defendants filed their "...Motion To Transfer Venue" (Document No. 12), seeking to have this action transferred to the United States District Court for the Western District of Texas, San Antonio Division, where the WB Defendants Chapter 7 case(s) is pending. On September 21, 2009, Plaintiff filed its "Notice Of Voluntary Dismissal With Prejudice..." (Document No. 18) of the WB Defendants, as well as "Plaintiff's Supplemental Motion To Remand" (Document No. 19).

On November 16, 2009, the pending motions for remand and transfer were referred to the undersigned by the Honorable Graham C. Mullen. On March 30, 2009, the undersigned ordered the parties to prepare brief status updates and to appear for a motions hearing on April 22, 2009. After careful consideration of the arguments of counsel at the hearing, in addition to the briefs and record, the undersigned denied the motions to remand to state court and took under advisement the motion to transfer. Following additional consideration and research, the undersigned will deny "Defendants' Motion To Transfer Venue" (Document No. 12).

## DISCUSSION

After determining that federal jurisdiction is appropriate in this matter, the question remaining is whether the case should be transferred to the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1412, and/or 28 U.S.C. § 1404(a).

Plaintiff opposes transfer, contending that the claims against the remaining Defendants are "tort claims sounding under North Carolina law; that the tenuous connection arising from an indemnification clause in an agreement between the GPS Defendants and the WB Entities does not make this an action "related to" a case under title 11; and that Defendants' efforts to transfer amount to mere forum-shopping. (Document No. 25). Defendants favor transfer, arguing that under

3

28 U.S.C. § 1412 and 28 U.S.C. § 1404(a), transfer is in the interest of justice and the convenience of the parties.

**A. Analysis Under § 1404 or § 1412**.

According to 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." "Deciding whether transfer under § 1412 is warranted requires a case specific analysis that is subject to broad discretion of the district court." Creekridge Capital, LLC v. Louisiana Hospital Center, LLC, 410 B.R. 623, 629 (D.Minn. 2009) citing In Re Bruno's, 227 B.R. 311, 324 (Bankr.N.D.Ala. 1998). Similarly, 28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Also like § 1412, a district court's decision to transfer pursuant to § 1404 "requires a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Creekridge, 410 B.R. at 627 quoting Terra Int'l Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997).

Almost five years ago, the United States District Court for the Southern District of West Virginia issued an opinion, cited approvingly by several other district courts, that includes a detailed analysis of the choice between the § 1404 and § 1412 change of venue statutes. Dunlap v. Friedman's, Inc., 331 B.R. 674 (S.D.W.Va. 2005). In Dunlap, the plaintiff alleged among other claims that the defendant jeweler had engaged in a broad pattern and scheme of fraudulent and deceptive conduct. Dunlap, 331 B.R. at 675-76. The defendant eventually filed for protection under Chapter 11 in the United States Bankruptcy Court of the Southern District of Georgia ("Georgia Court"), and then filed a motion to transfer the case from the Southern District of West Virginia to the Georgia Court. Id. at 676. Unlike the case now pending in this Court, an existing defendant was

4

proceeding in bankruptcy court and the plaintiff had filed a claim in the bankruptcy court.

In granting the transfer, the Dunlap court examined the application by other courts of the change of venue statutes:

> There is a split of authority on the issue. Some courts maintain that transfer of actions "related to" bankruptcy proceedings is governed by § 1412 . . . Other courts maintain that § 1404(a) controls . . . Interestingly, courts have reached different conclusions as to which interpretation constitutes the majority view. Cf. In re Bruno's, 227 B.R. at 323 (majority of cases use § 1412 transfers), with Rumore, 2001 WL 1426680, at *2 ("most courts" hold § 1404 governs transfer of "related to" actions).

Id. at 677 (internal citations omitted) quoting City of Liberal v. Trailmobile Corp., 316 B.R. 358, 362 (D.Kan.2004). The court in Dunlap concluded that 28 U.S.C. § 1412 was the appropriate statute for transfer of venue purposes in that case considering its interpretation that the statutory language "proceeding under title 11" should encompass a proceeding arising under title 11 or arising in or related to a case under title 11. Id. at 680. See also, Creekridge, 410 B.R. at 627 ("a motion to transfer an action related to a bankruptcy proceeding in another forum is appropriately analyzed under § 1412").

The conclusion that the Dunlap case in the Southern District of West Virginia was "related to" the bankruptcy action filed in the Georgia Court seems relatively straightforward compared to the instant case since the primary defendant in that case was also a party in the bankruptcy action, and the plaintiff had filed a claim in the bankruptcy action. Here, the WB Entities appearing in bankruptcy court in the Western District of Texas are no longer parties to this lawsuit after being voluntarily dismissed – first without prejudice and later with prejudice. Further distinguishing this action from Dunlap is the fact that Plaintiff has not filed a claim in the Texas bankruptcy court. The relation between the instant case and the action in the Western District of Texas hinges on an

5

argument that *if* the GPS Defendants are found liable to Plaintiff, those GPS Defendants *might* have a right to indemnification by the WB Entities currently participating in bankruptcy proceedings in the Western District of Texas.

Creekridge Capital, LLC v. Louisiana Hosptial Center, LLC is one recent case that approvingly cites Dunlap and reaches conclusions that are applicable to this case. In Creekridge, the district court was persuaded that if the plaintiff prevailed on its claims, the estate of a bankrupt defendant "could conceivably be impacted in the sense that the non-Bankrupt Defendants would likely assert indemnification claims against [the] bankruptcy estate." Creekridge, 410 B.R. at 628 citing In re Dow Corning Corp., 86 F.3d 482, 288 (6th Cir. 1996) (holding that claims against nondebtor defendants were "related to" a debtor defendant's bankruptcy proceeding, in part, because of the nondebtor defendants' potential indemnification claims against debtor defendant). Based on the Eight Circuit "conceivable effect" test, the Creekridge court thus found that the suit was "related to" the defendant Louisiana Hospital Center, LLC's bankruptcy proceeding. Id.

The Fourth Circuit has adopted the Third Circuit's test for determining the existence of "related to" jurisdiction:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate. . . . the Pacor test does not require certain or likely alteration of the debtor's rights, liabilities, options or freedom of action, nor does it require certain or likely impact upon the handling and administration of the bankruptcy estate. The possibility of such alteration or impact is sufficient to confer jurisdiction.

In re Celotex, 124 F.3d 619, 625-26 (4th Cir. 1997) quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1994); see also, Blanton v. IMN Financial Corp., 260 B.R. 257, 261-62 (M.D.N.C. 2001).

The Pacor case involved a products liability action brought in Pennsylvania state court by Plaintiff Higgins regarding claims related to exposure to asbestos supplied by Defendant Pacor. Pacor, 743 F.2d 985. In response, Defendant Pacor filed a third party complaint impleading the Johns-Manville Corporation, which Pacor claimed was the manufacturer of the asbestos. Id. at 986. Johns-Manville filed a petition in bankruptcy in the Southern District of New York, and the state court severed Pacor's third party action against Johns-Manville from the Higgins action against Pacor. Id. Pacor then filed for removal in the Bankruptcy Court of the Eastern District of Pennsylvania and transfer to the Southern District of New York seeking to remove the entire Higgins-Pacor-Manville controversy and join it with the Johns-Manville bankruptcy administration. Id.

In Pacor, the Third Circuit affirmed the district judge's ruling that the original Higgins-Pacor suit was not "related to" the Manville bankruptcy proceedings." Pacor, 743 F.2d 986.

> At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins-Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the Higgins-Pacor action, it could not be bound by res judicata or collateral estoppel. . . . any judgment received by the plaintiff Higgins could not itself result in even a contingent claim against Manville, since Pacor would still be obligated to bring an entirely separate proceeding to receive indemnification.

Id. at 995.

Factually, the Pacor case appears to have more in common with the instant action than

7

Blanton; however, the Pacor decision also distinguished its circumstances from In re Brentano's, 27 B.R. 90 (Bankr.S.D.N.Y. 1983), finding the presence (or absence) of an indemnity agreement dispositive. Pacor, 743 F.2d 995; see also, Blanton, 260 B.R. at 262-63. In this case the relevance of the APA's indemnification provision is disputed. That provision may be vital to a subsequent action by Defendants, but it is not clear it is important to this lawsuit.

Although the undersigned finds this a close call, the broad standard recognized by the Fourth Circuit for determining "related to" jurisdiction, combined with the presence of the indemnification provisions in the APA, compel this Court to find that the outcome of this action could *conceivably* have an impact on the handling of the bankruptcy administration in the Western District of Texas, and is therefore sufficiently "related to" the bankruptcy case(s) there to apply § 1412 to the pending question of transfer. The undersigned notes, however, as other courts have in reaching similar conclusions, "the ultimate determination of whether transfer is warranted likely would be not different regardless of whether the motion is analyzed under § 1412 or § 1404." Creekridge, 410 B.R. at 628 n.3 citing Trailmobile, 316 B.R. at 362.

**B.  Application of 28 U.S.C. § 1412**.

The party moving for change of venue under 28 U.S.C. § 1412 bears the burden of proof and must show by a preponderance of the evidence that the interest of justice or convenience of the parties would be served by a transfer of the case or proceeding. HH1, LLC v. Lo'r Decks at Calico Jacks, LLC, 2010 WL 1009235 at * 5 (Bkrtcy.M.D.N.C. March 18, 2010). The two prongs courts analyze in determining whether to transfer a case related to a bankruptcy proceeding are (1) interest of justice and (2) convenience of the parties; a sufficient showing of either justifies transfer. See Blanton, 260 B.R. at 266, quoting In re Harnischefeger Indus., Inc., 246 B.R. 421, 435 (Bankr.N.D.Ala. 2000).

**1. Interest of Justice**.

"The interest of justice component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis." HH1, LLC, 2010 WL 1009235 at * 5 quoting Gulf States Exploration Co. v. Manville Forest Products Corp., 896 F.2d 1384, 1391 (2d Cir. 1990).

> The cases have identified a number of factors that may be considered in determining whether transfer of venue will serve the interest of justice, including the following: (a) the economic administration of the bankruptcy estate; (b) the presumption in favor of trying proceedings related to a bankruptcy case in the court in which the bankruptcy is pending; (c) judicial efficiency; (d) ability to receive a fair trial; (e) the state's interest in having local controversies decided within its borders; (f) enforceability of any judgment rendered; and (g) the plaintiff's original choice of forum.

In re Velocita Corp., 285 B.R. 188, 190 (Bkrtcy.M.D.N.C. 2002) citing Blanton, 260 B.R. at 266. Applying the "interest of justice" factors to the circumstances of this case, the undersigned concludes that many of them fail to significantly inform the analysis one way or the other, but on balance they weigh against transfer.

**a. Economic administration of the bankruptcy estate**.

The undersigned is not persuaded that the economic administration of the bankruptcy estate significantly favors transfer and is thus neutral in the analysis. To the Court's knowledge, the related bankruptcy proceedings are not waiting on a result from this lawsuit. To the contrary, review of the docket sheets of the WB Entities' cases in the Western District of Texas Bankruptcy Court and communication with judicial chambers of that Court indicate that some of the WB bankruptcy cases are closed and others are "winding down." Furthermore, the pending motion to transfer is to the district court in the Western District of Texas, *not* the bankruptcy court. (Document No. 12). Obviously, that district court provides greater physical proximity to the remaining bankruptcy proceedings, but it is not clear applying the pertinent § 1412 factors cited above that such proximity

provides sufficient benefit to the bankruptcy proceedings in this instance to justify transfer. This is especially true where the actual issues in the pending lawsuit are distinct from (though conceivably "related to") matters in the bankruptcy proceedings. Whether this case is decided by the Western District of North Carolina or the Western District of Texas, Defendants would have additional steps they must follow to pursue claims against the WB Entities. Transfer may be more convenient for the Defendants, but the undersigned finds that swift resolution is in the best interests of all parties and is no more likely in Texas than North Carolina. Defendants have thus failed to offer an explanation of how the *economic administration* of the bankruptcy estate benefits from transfer to the Western District of Texas.

### b. Presumption in favor of bankruptcy court.

The general presumption is that "proper venue for a proceeding related to a bankruptcy case is the district hearing the bankruptcy." Blanton, 260 B.R. at 267. That presumption in this case is tempered somewhat by the fact that the Plaintiff to this lawsuit has not filed a claim in that bankruptcy action and the WB Entities subject to the bankruptcy action in Texas are no longer parties to this suit. It is significant to the undersigned that this "proceeding involves discrete, nonbankruptcy issues that have not arisen previously and are not likely to arise again in the Debtor's pending bankruptcy case." Genworth Life And Annuity Ins. Co. v. Hall, 2008 WL 59150 at *2 (Bkrtcy. M.D.N.C. 2008). Although the GPS Defendants' potential claims for indemnification against the WB Entities make this case sufficiently "related to" the bankruptcy action under the Fourth Circuit's broad standard to apply § 1412 – the pending issues in this lawsuit are not so related to the Texas bankruptcy cases to mandate transfer. Nevertheless, acknowledging the general presumption, this factor weighs in favor of transfer.

### c. Judicial efficiency.

Defendants have not presented a convincing argument that transfer significantly improves judicial efficiency. It is arguably most efficient for this action to remain where it is, with lawyers who are actively engaged and ready to move forward, rather than sending it to another jurisdiction. This factor weighs against transfer.

### d. Fair Trial and Enforceability of Judgment.

The undersigned works from a presumption that a fair trial will be received wherever this matter lands and that any resulting judgment will be enforceable. No evidence has been shown to suggest otherwise. The undersigned views these factors as neutral.

### e. State's interests and plaintiff's choice of forum.

The remaining "interest of justice" factors involve a state's interest in resolving local controversies and the plaintiff's original choice of form. These factors strongly support Plaintiff's position and weigh heavily against transfer. The undersigned has been especially influenced by these last two factors and is greatly concerned about the injustice that would result in requiring this Plaintiff to litigate its case in Texas. Plaintiff brought this action in Mecklenburg County Superior Court to seek damages pursuant to a default under a lease of premises in Charlotte, North Carolina. The primary issue in the instant action is the liability of the GPS Defendants to Plaintiff for obligations under the Lease. Plaintiff specifically alleges in its Amended Complaint (Document No. 1-1) that pursuant to the APA the WB Entities and the GPS Defendants merged and the liabilities of WBE-NC became the liabilities of the GPS Defendants. (Document No. 1-1, ¶ 53). Plaintiff has made a persuasive argument that the North Carolina law will apply to its claims and that this case should not be transferred.

Defendants contend that Plaintiff's remaining claims hinge on the APA, and that the APA was negotiated and executed in Pennsylvania and is subject to Pennsylvania law. (Document No.

15). Although the APA includes disputed provisions regarding indemnification that may form the basis of future claims by Defendants, the undersigned is not persuaded that Texas is a preferable forum to interpret Pennsylvania law, even *if* such interpretation is necessary in resolving this case.

The remaining parties in the instant lawsuit disagree as to what, if any, indemnification rights may exist between the WB Entities and the GPS Defendants and the relevance of those rights to the instant action. GPS contends that it would have a right to indemnification and that the indemnification issues are so related to the bankruptcy that the present lawsuit should be transferred to Texas. Plaintiff contends that the GPS Defendants' claims for indemnification pursuant to the terms of the APA will fail, and further that interpretation of the APA is not necessary to resolving this case. The undersigned has determined that a forecast of the likelihood of any party's success on indemnification claims would be premature and is not *directly* related to the issues in this lawsuit.

To the extent this case involves issues of North Carolina (and possibly Pennsylvania) law, the lease of property in this district, and Plaintiff's choice of forum in this district, the undersigned finds that transfer is inappropriate.

### 2. Convenience of the Parties.

The undersigned has also considered the second prong of the § 1412 analysis - "convenience of the parties." Factors relevant to "convenience of the parties" include: (a) location of the plaintiff and defendant; (b) ease of access to necessary proof; (c) convenience of witnesses; (d) availability of subpoena power for the unwilling witnesses; and (e) expense related to obtaining witnesses. RFF Family Partnership, LP, v. Wasserman, 2010 WL 420014 at * 7 (N.D.Ohio 2010) citing In re Bruno's, Inc., 227 B.R. at 324-25.

#### a. Location of the parties.

Apparently the remaining parties are located in Texas, Pennsylvania, and in or near

12

Charlotte, North Carolina. This factor does not strongly favor either district, although as suggested above, the Plaintiff's choice of forum and the underlying events occurring in this district tend to dissuade the undersigned from transfer.

### b. Ease of access to necessary proof.

The proof involved in this case would appear to primarily include documents that may currently be located in Texas or Pennsylvania, but should be easily accessible here. This factor is neutral.

### c. Witnesses.

Potential witnesses seem to primarily be the immediate parties to the lawsuit. Those witnesses are located in Pennsylvania, Texas, and in or near Charlotte, North Carolina. The parties have not convinced the Court that factors related to the availability of witnesses in resolving the instant lawsuit significantly favor either district.

Based on these factors the undersigned is not satisfied that convenience of the parties requires that this action be transferred to the Western District of Texas. Without convincing evidence to the contrary, the Court is inclined to leave this case in the district where it was originally brought.

## CONCLUSION

Defendants have failed to convince the undersigned that the transfer they seek to the United States District Court for the Western District of Texas, San Antonio Division, is appropriate. Taking all the relevant facts into account and applying them to the factors recognized by the courts in analyzing § 1412 cases, the undersigned finds that the balancing of the interest of justice and convenience of the parties weighs against transfer. Moreover, the undersigned is persuaded that equity and efficiency direct that this matter remain in this Court.

Based on the foregoing, the undersigned concludes that Defendants have not sustained their burden of showing by a preponderance of the evidence that the interest of justice or convenience of parties and witnesses, require this matter to be transferred to the Western District of Texas.

**IT IS, THEREFORE, ORDERED** that "Defendants' Motion To Transfer Venue" (Document No. 12) is **DENIED**.

Signed: May 7, 2010

David C. Keesler
United States Magistrate Judge